IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                              Criminal Case No. 3:19cr56-2

JOSEPH ERIC CARTER,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Joseph Eric Carter's Motions for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF Nos. 84, 90.) The United States responded in opposition (the "Opposition"). (ECF No. 95.) Carter filed a reply to the Opposition. (ECF No. 99.) This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motions for Compassionate Release. (ECF Nos. 84, 90.)

### I. Background

On March 20, 2019, Carter was charged with fifteen criminal counts: conspiracy to commit robbery affecting commerce, in violation of 18 U.S.C. § 1951(a) (Count One), thirteen counts under Hobbs Act Robbery, in violation 18 U.S.C. § 1951(a) in relation to a string of robberies (Counts Two–Eleven, Thirteen–Fifteen), and attempted Hobbs Act Robbery (Count Twelve). (ECF No. 12.) On July 11, 2019, Carter entered into a written plea agreement with the United States in which he pled guilty to Count One, the conspiracy to commit Hobbs Act Robbery charge, and had the remaining charges dismissed. (ECF No. 43.)

Prior to sentencing, the probation officer prepared the Presentence Report ("PSR") for Carter, summarizing his criminal history. (ECF No. 73.) Carter was the get-away driver for thirteen robberies that occurred in ten days. (ECF No. 73, at 6–11.) His offense level computation was increased by three points for brandishing a dangerous weapon. *See* U.S.S.G. § 2B3.1(b)(2)(E). (ECF No. 73, at 13.) Carter's prior offenses established a Criminal history Category of II. (ECF No. 73, at 19–22.) His prior convictions include possession of drug paraphernalia, petty larceny, and other misdemeanor offenses. (ECF No. 73, at 19–22.) Pursuant to the Sentencing Guidelines, Carter's Total Offense Level of 29 and Criminal History Category of II resulted in a Sentencing Guidelines range of 97-121 months. (ECF No. 73, at 27–28.) Carter prevailed on his objection to the PSR, (ECF No. 72), lowering the Guidelines range. (See ECF No. 90, at 1.) The Court sentenced Carter to a term of sixty (60) months, to be followed by three years of supervised release and $3,603.00 in restitution. (ECF No. 81.)

The PSR also provided information on Carter's physical condition stating that he is "healthy and has no history of health problems." (ECF No. 73, at 26.) The PSR noted that Carter "reported that he was diagnosed with [attention deficit hyperactivity disorder ("ADHD")] in elementary school" for which he was "prescribed Adderall which he had been taking for years," prior to his arrest. (ECF No. 73, at 26.) Carter also informed the probation officer that "he believe[d] that he would benefit from mental health treatment." (ECF No. 73, at 26.) Additionally, the PSR recorded Carter's "extensive history of substance abuse" and noted that he "began using cocaine hydrochloride at the age of 14" and "used crack cocaine daily in the year prior to his arrest." (ECF No. 73, at 26.) The PSR further states that he "began taking non-prescribed Oxycontin and Oxycodone at the age of 18, and he took it weekly until he was 22. From the ages of 22 to 26, he took [ten pills] per day." (ECF No. 73, at 26.) Finally, the PSR

2

states that Carter "began sniffing heroin at the age of 26, and he used it every day prior to his arrest." (ECF No. 73, at 26.)

Carter is currently housed at RPM Baltimore in Washington, Maryland. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/. The Bureau of Prisons ("BOP") lists Carter's projected release date as April 20, 2023.

On September 17, 2020, Carter filed a *pro se* Motion for Compassionate Release. (ECF No. 84.) On November 16, 2020, Carter, acting through counsel, filed the instant Motion for Compassionate Release. (ECF No. 90.) In the Motion, Carter broadly describes the current public health crisis in BOP facilities caused by COVID-19. (ECF No. 90, at 3.) Carter, now 34 years old, does not contend that he is particularly susceptible to COVID-19, but instead describes the COVID-19 conditions at FCI Petersburg Medium.[1] Carter asserts that the unsafe COVID-19 conditions at FCI Petersburg Medium, without more, established an extraordinary and compelling reason for his compassionate release. (ECF No. 90, at 3.)

The United States opposes Carter's request for compassionate release, arguing that he has not established an extraordinary and compelling reason for compassionate release, he has not shown that he is at particularized risk of contracting COVID-19 due to medical ailments, he has not shown that he was at a higher risk of contracting COVID-19 at FCI Petersburg Medium, he has not shown that his release plan reduces his risk of contracting COVID-19, and because the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against his immediate release. (ECF No. 95.) The United States specifically notes that the nature of Carter's underlying offense, "a

---

[1] At the time of the filing of Carter's Motion for Compassionate Release, (ECF No. 90), Carter was housed at FCI Petersburg Medium in Hopewell, Virginia. Carter is currently housed at RPM Baltimore in Washington, Maryland. To the extent it can, the Court will address conditions at both facilities.

dangerous and vicious crime spree spanning ten days during which the defendant conspired with his brother to rob [thirteen] businesses and attempt to rob yet another business," weighs against his release as it shows that he poses a threat to the public. (ECF No. 95, 1.)

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[2] Prior to the First Step Act in 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and

---

[2] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. *See* 28 U.S.C. § 994(t).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of

agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B.  Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the

petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[3]

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also Kibble*, 992 F.3d 326 (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

---

[3] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
    (1) (A) extraordinary and compelling reasons warrant the reduction; or
    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III. Analysis

After due consideration, the Court will deny the Motions. (ECF Nos. 84, 90.) Although the record reflects that Carter exhausted his administrative remedies, the Court will deny the Motion upon finding that Carter does not offer any "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). Carter contends that the Court should grant his Motions because of the consistently unsafe COVID-19 conditions at FCI Petersburg Medium. Carter fails to provide any particularized details regarding his current

8

health status which could make him particularly susceptible to COVID-19.[4]  Further, Carter is no longer located at FCI Petersburg Medium, where he took specific issue with the facility's COVID-19 conditions.  While conditions at RPM Baltimore are not publicly reported, the condition at the facility alone would not be enough to establish an extraordinary and compelling reason for immediate release.  *See id.*

In any event, the Court will consider Carter's request under the applicable statutory sentencing factors.  Upon review, the dangerous nature of Carter's underlying conviction gives the Court great pause and suggests that he presents a threat to the public due to his disregard for the law and that he presents a high probability of recidivism.  Although the Parties acknowledge that Carter does not have an extensive previous criminal history, the dangerous nature of his underlying offense suggests that the Court should consider public safety and whether his sentence promotes respect for the law.  (*See generally* ECF No. 73.)  Turning to other § 3553(a) factors, the Court notes that Carter has almost served the entirety of his sixty (60) month sentence and is scheduled to be released in April 2023.  Carter is currently serving the remainder of his sentence in a Residential Reentry management facility that will provide useful programming for Carter's successful transition into society.  Upon release Carter will begin serving a three-year supervised release term for his offense.  The Court finds that the totality of Carter's record and the need to protect the public outweigh his request immediate release.

---

[4] The United States notes that in Carter's September 28, 2020 sentence reduction request that he submitted to the BOP, Carter "claimed a debilitating medical condition and, without any supporting documentation, stated that since the age of 16, he has had a 'hole in this throat which has caused [him] to have chronic breathing issues for the rest of [his] life.'" (ECF No. 93, at 11.) Carter does not make any reference to this ailment in his Motion for Compassionate Release. Additionally, the Court has closely examined Carter's submitted medical records. The records include one medical examination of Carter while in BOP custody, from November 6, 2019, in which the physician cleared him and stated that he had no health issues. (ECF Nos. 93-1, 95-1.)

9

Additionally, Carter avers that his consistent participation in the drug rehabilitation program and certification of his GED while incarcerated indicates good behavior that weighs in favor of his immediate release. (ECF Nos. 84, 90.) In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). With these dictates in mind, the Court acknowledges Carter's good behavior and participation in the Drug Abuse programs during his time in prison, but these measures do not warrant his early release in light of the seriousness of his conviction and the remaining time on his sentence to be served at RPM Baltimore.

Finally, the Court recognizes the grave health risks prisoners have faced during this pandemic and commends the nationwide efforts to promptly vaccinate prison staff and inmates. While the Court is not aware of whether Carter has obtained his vaccine, the BOP reports that a total of 344,223 COVID-19 vaccine doses have been administered across all its facilities. *See* Bureau of Prisons, *COVID*-19, https://www.bop.gov/coronavirus. The Court requests that the BOP issue a COVID-19 vaccine to Carter if it has not done so already. Considering the foregoing, the Court concludes that the current record does not justify Carter's immediate release from federal imprisonment.

### IV. Conclusion

For the reasons explained above, the Court will deny the Motions for Compassionate Release. (ECF Nos. 84, 90.)

An appropriate Order shall issue.

Date: 1/5/2023　　　　　　　　　　　　　　　　／s／
Richmond, Virginia　　　　　　　　　　M. Hannah Lauck
　　　　　　　　　　　　　　　　　　　United States District Judge

11